668 So.2d 1150 (1995)
Albert J. AVENAL, Jr., et al.
v.
The STATE of Louisiana, DEPARTMENT OF NATURAL RESOURCES.
Nos. 95-CA-0836, 95-C-2421.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1995.
Rehearing Denied December 19, 1995.
Writ Denied January 26, 1996.
Wendell H. Gauthier, Scott Labarre, Gauthier & Murphy, Metairie, Michael St. Martin, Michelle Mayne Davis, St. Martin & Lirette, Houma, and Carolyn A. McNabb, Houma, for Plaintiffs/Appellees.
*1151 Richard P. Ieyoub, Attorney General, Andrew C. Wilson, Henry S. Provosty, Rebecca A. Fariss, Assistant Attorneys General, New Orleans, for Defendant/Appellant.
Before CIACCIO, LOBRANO and JONES, JJ.
LOBRANO, Judge.
The State of Louisiana, through the Department of Natural Resources (DNR), appeals the denial of its exception of improper venue, and also seeks supervisory writs[1] from the denial of its dilatory exception of nonjoinder of a necessary party. On May 16, 1995 this court ordered the consolidation of DNR's writ application with this appeal. Although both judgments are interlocutory in nature, because irreparable harm may result, we will consider both. La.C.C.Pro. art. 2083; See also, Herlitz Construction Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).
Plaintiffs, a purported class of oyster fishermen owning leases in St. Bernard and Plaquemines parishes, filed the instant suit asserting that their leases were destroyed or damaged because of the intrusion of freshwater from the Mississippi River via the Caernarvon Freshwater Diversion Project. They assert that the Caernarvon Project was authorized, constructed, funded and operated by the State of Louisiana through its agency, the Department of Natural Resources. Plaintiffs allege that the actions of the State "has resulted in a permanent and substantial interference with plaintiffs' use and enjoyment of their land amounting to a taking of an interest in [their] property rights without compensation in violation of Article 1, Section 4 of the Louisiana Constitution...."

VENUE:
This suit was filed in Plaquemines Parish. DNR excepted to that venue arguing the case should be transferred to East Baton Rouge Parish. DNR argues that plaintiffs' suit is, in reality, an attack on the decision-making policy of the State and that those decisions are made in the State capitol in Baton Rouge. It asserts that, even though the damages occurred in Plaquemines Parish, plaintiffs' cause of action is the ministerial and policy making decision of DNR and thus venue is proper only in East Baton Rouge Parish. In support, DNR relies on La.R.S. 13:5104(A), Abshire v. State, through Dept. of Ins., W93-923, (La.App. 3rd Cir. 4/6/94), 636 So.2d 627, writ denied, 94-1213 (La. 6/24/94), 640 So.2d 1332; Demolle v. Department of Wildlife and Fisheries, 580 So.2d 1083 (La.App. 4th Cir.1991), writ denied, 586 So.2d 534 (La.1991) and Devillier v. State of Louisiana, 590 So.2d 1184 (La.1991). We affirm the trial court.
Louisiana Revised Statute 13:5104(A) provides:
"A. All suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises."
Both sides to this litigation agree that the above statute controls. The narrow issue to be decided is in which parish did plaintiffs' "cause of action" arise. The term "cause of action" in the above statute has been the source of much consternation among the circuits and has eluded a precise definition. See, e.g. Commercial Nat. Bank v. First Nat. Bank, 603 So.2d 270 (La.App. 2nd Cir. 1992), writ denied, 605 So.2d 1151 (La. 1992); V.C. Nora, Jr. Bldg. and Remodeling v. State, 93-1469 (La.App. 3rd Cir. 3/30/94), 635 So.2d 466; and Abshire v. State, through Dept. of Ins., supra. Despite the definitional uncertainty, for purposes of applying the above cited statute, we conclude that the place where the operative facts occurred which support plaintiffs' entitlement to recovery is where their cause of action arose. In the instant case, we need only look to the allegations of plaintiffs' petition to make this determination.
Despite DNR's arguments to the contrary, a simple review of plaintiffs' petition leads to the conclusion that their claim is one of inverse condemnation. Inverse condemnation is a procedural remedy for a property *1152 owner seeking compensation for land already taken or damaged by a governmental body with powers of eminent domain where no expropriation has commenced. State through DOTD v. Chambers Inv. Co., 595 So.2d 598 (La.1992), citing Reymond v. State, Dept. of Highways, 255 La. 425, 231 So.2d 375 (1970). "The action for inverse condemnation is available in all cases where there has been a taking or damaging of property where just compensation has not been paid...." Id. at 602. The right to seek compensation as a result of a taking is based on the self-executing command of Article 1, Section 4 of the Louisiana Constitution which provides that "[p]roperty shall not be taken or damaged by the state ... except for public purposes and with just compensation...."
Plaintiffs have not contested the decision of the State to construct the Caernarvon Project, nor do they attack DNR's decisions in operating the project. Their suit is not aimed at contesting the "public purpose" of the taking. They simply allege that the freshwater flowing through the project has damaged or destroyed their property, and that the control structure which permits the flow of water is owned and operated by the State, through DNR. Those are the operative facts which are alleged to support plaintiffs' claim, and they undoubtedly occurred in Plaquemines Parish.
DNR relies on the argument that plaintiffs' cause of action arose in Baton Rouge where the decision was made to construct the Caernarvon Project, and where DNR performs its ministerial duties in operating the project. We find no merit in this argument. Plaintiffs are not seeking damages because of DNR's decisions, or any State policy to restore wetlands. They are alleging that the actions of the state in carrying forth that policy, i.e. allowing freshwater to flow into the marshes of Plaquemines Parish, has resulted in a taking of their property for which they are entitled to be compensated.
If plaintiffs were alleging that there was no legitimate public purpose in building and operating the Caernarvon Project, Abshire, Demolle and Devillier would be supportive of defendant's argument. However, based on our reading of plaintiffs' petition, those cases are factually distinguishable.
In Abshire, the issue was the proper venue for an action against the State based on the alleged mismanagement, negligence and incompetence of senior state officials. The court concluded that when the ministerial actions of state officials are called into question, Baton Rouge offered the only appropriate forum. In the instant case, plaintiffs do not allege the negligence of DNR officials, nor do they question their ministerial actions. Demolle is irrelevant because that case was decided on a specific venue statute, R.S. 56:7, which governs suits filed against the Department of Wildlife and Fisheries.
Finally, Devillier is inapplicable because there the plaintiffs sued the State to declare unconstitutional a statute which imposed civil penalties for conducting unauthorized raffles. The Supreme Court held that "[a]n action to prohibit a state agency from assessing a statutory fine based on the unconstitutionality of the statute must be brought in East Baton Rouge Parish." Plaintiffs in the instant case do not seek to declare any state statute unconstitutional.
We find additional support for our conclusion that Plaquemines Parish is the proper venue in the legislative intent expressed in the specific venue statutes for expropriation proceedings. For example, La.R.S. 19:2.1, the general expropriation statute, provides for venue in the parish where the property to be taken is located. Highway expropriation proceedings must be filed in the parish where the property is located. La.R.S. 48:442. And, when property is taken for levee purposes, expropriation proceedings must be instituted in the parish where the property is located. La.R.S. 38:352.
Although the instant suit is not an expropriation per se, it is similar in that plaintiffs allege a taking without just compensation. Of course, after a trial on the merits, the courts will have to determine if there was in fact a taking of property rights within the purview of Article 1, Sec. 4. However, that issue is not before us at the present time.
*1153 We therefore conclude the trial judge was correct in denying DNR's venue exception and affirm that decision.

EXCEPTION OF NON JOINDER:
DNR complains that the Department of Wildlife and Fisheries should be joined as a defendant because "the matter cannot be properly adjudicated without the formal participation of the Department of Wildlife and Fisheries as [that department] is the sole state agency in charge of administering the State's entire oyster lease program. Further, adjudication without the Department of Wildlife and Fisheries will prejudicially affect the rights of DNR." DNR further argues that the nature and extent of plaintiffs' leasehold rights cannot be properly adjudicated without the agency's formal participation. DNR also refers to the fact that some lease agreements have indemnification agreements which purport to hold the state harmless from the claims asserted by plaintiffs. The trial court rejected this argument and denied the exception of non-joinder. DNR sought writs which, as we previously noted, were consolidated with this appeal. We agree with the trial court, and deny the writ application.
Plaintiffs' have alleged that their property has been damaged or taken by the State through its agency, DNR. Although the source of plaintiffs' property rights is the leases they obtained from the Department of Wildlife and Fisheries, we see no need to add that department as a defendant. Unlike the facts asserted in the petition attached to DNR's reply brief,[2] plaintiffs in the instant suit are not asserting a breach of the lessor's warranty, nor any other breach of their leases. Although officials of the Department of Wildlife and Fisheries may be needed by both DNR and plaintiffs as witnesses in this case, they are not necessary defendants in adjudicating plaintiffs' claim of inverse condemnation. And certainly DNR can plead and assert the indemnification agreement as an affirmative defense. In sum, plaintiffs are not seeking a declaration of their rights under the leases as the leases speak for themselves. They only seek compensation for the alleged damage to the rights granted by the leases.

WRIT NO. 95-C-2421:
Exactly six days prior to oral argument, DNR filed another writ seeking reversal of the trial court's denial of its motion to compel. The emergency writ panel of this court granted a stay order and referred that writ application to the appeal panel. We have reviewed the application and the response thereto and decline to interfere with the trial court's discretion in this discovery matter. The stay order previously issued is hereby vacated.
We therefore agree with the trial judge and deny DNR's writ application on this issue.
JUDGMENT AFFIRMED; WRITS DENIED; STAY ORDER VACATED.
NOTES
[1] No. 95-C-0582.
[2] DNR attaches to its brief a petition filed in East Baton Rouge Parish entitled "Slavich v. Department of Wildlife and Fisheries" wherein the plaintiffs are seeking damages in warranty against the Department of Wildlife and Fisheries because of the intrusion of freshwater on their leases. That suit has absolutely no bearing on the issues raised in the instant appeal.